# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION


SHANNON KENDER                                                PLAINTIFF


V.                              NO. 3:16-CV-00126-JTR


ANDREW SAUL,
Commissioner of the
Social Security Administration                                DEFENDANT



## MEMORANDUM ORDER

Pending before the Court is a Motion for Attorney's Fees, pursuant to 42 U.S.C. § 406(b), filed by Howard D. Olinsky ("Mr. Olinsky"), one of the attorneys for the claimant, Shannon Kender ("Kender"). *Doc. 20.* Because Mr. Olinsky seeks a contingent fee award of attorney's fees, from the aggregate amount of past-due disability insurance benefits ("DIB") awarded to Kender and his three minor children, he is the real party in interest for purposes of that Motion. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 798, n. 6 (2002).

Defendant Commissioner of the Social Security Administration ("the Commissioner") has filed a Response that raises the important issue of whether Mr.

Olinsky filed his Motion for Attorney's Fees "within a reasonable time."[1] *Doc. 21 at 1-2.* Before resolving that issue, it is important to understand the procedural history of this case.

## I. Background

In September of 2014, Kender retained Jay Scholtens ("Mr. Scholtens") to represent him in administrative proceedings before the Commissioner to recover DIB based on a disability onset date of January 24, 2014. *Docs. 10-4 at 6-7; 13 at 1.* After conducting an administrative hearing, an Administrative Law Judge ("ALJ") entered a decision, dated December 22, 2015, denying Kender's claim for DIB. *Doc. 2-1 at 2*; *Doc. 10-2 at 7-21.* On March 8, 2016, the Appeals Council affirmed the ALJ's decision and it became the final decision of the Commissioner. *Doc. 10-2 at 2-3.*

---

[1]  Even without the Commissioner raising the issue of the timeliness of Mr. Olinsky's Motion, the Court may, *sua sponte*, raise that issue. *See Garland v. Astrue*, 492 F.Supp.2d 216 (E.D. NY 2007) (denying § 406(b) motion as untimely even though Commissioner and plaintiff did not object and recognizing the need for courts to exercise "independent judgment" and "judicial discretion" to reject fee applications as untimely even absent an objection); *Rice v. Astrue*, 831 F.Supp.2d 971, 977, 982 (N.D. Tex. 2011) (*sua sponte* raising issue of the timeliness of § 406(b) fee petition and finding request was untimely).

Rather than using Mr. Scholtens, Kender hired Mr. Olinsky to handle his appeal of the Commissioner's adverse decision. In their written fee agreement, Kender agreed that Mr. Olinsky could recover: (1) an attorney's fee award under the Equal Access to Justice Act ("EAJA"); (2) an attorney's award fee of 25% of Kender's past-due disability insurance benefits ("406(b) fees"); or (3) both. Fee Agreement, *Doc. 20-1, at p. 2*. However, the contract specifically provided that "if the court awards my federal court attorney [Mr. Olinsky] a fee out of my past-due benefits and also awards an EAJA fee for that same work, my attorney must refund the smaller amount to me [Kender]." *Id.*

On May 12, 2016, Olinsky initiated this action by filing a Complaint that alleged the ALJ committed reversable error in denying Kender's claim for DIB. *Doc. 2*.

On May 18, 2017, I entered an Order and Judgment reversing the Commissioner's decision and remanding Kender's case for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[2] *Docs. 13-14*.

---

[2] *See Shalala v. Schaefer*, 509 U.S. 292, 300-301 (1993) (a sentence four remand "terminates the litigation with victory for the plaintiff," and a claimant, who obtains a sentence four judgment remanding the case, is a prevailing party regardless of whether he "prevails" before the agency on remand).

On August 14, 2017, Mr. Olinsky filed a Motion for Fees and Expenses under the EAJA. He requested a fee of $6,526.61 and expenses of $55.18. *Doc. 15*. On August 28, 2017, I granted Mr. Olinsky's Motion and awarded him $5,886.61 for 29.9 hours of attorney time at an hourly rate of $191.86; 1.5 hours of paralegal time at an hourly rate of $100; and $55.18 in expenses.[3] *Doc. 18*.

After remand, Mr. Scholtens resumed his representation of Kender in the administrative proceedings.[4] If Kender prevailed on his claim for DIB, each of his three minor children, as a matter of law, would be entitled to auxiliary benefits, which would be payable to Kender, as their representative payee. Thus, while Kender was the real party in interest, his minor children also had a stake in the outcome of his claim.

---

[3] I made a reduction in the amount Mr. Olinsky requested for paralegal time because several matters were billed by the paralegal that could have been performed by a secretary or clerk.

[4] In 2014, Mr. Scholtens and Kender signed a fee agreement which specified that, in the event of a favorable decision, Mr. Scholtens would receive "a fee equal to the lesser of 25% of the past-due benefits resulting from my claim(s) or $6,000, "the maximum dollar amount allowed pursuant to" the Social Security Act [42 U.S.C. § 406(a)]. The Commissioner later approved this written fee agreement. *Docs. 10-4 at 6; 20-2 at p. 4*.

Mr. Scholtens and Mr. Olinsky both *knew* that, to the extent there was an award of past-due DIB to Kender and related auxiliary payments to his children, a portion of Kender's *and* his children's benefits would be withheld by the Commissioner pending a decision by Mr. Olinsky on whether to seek an award of § 406(b) attorney's fees, in lieu of the $5,886.61 in attorney's fees and costs he had already been paid under the EAJA. Thus, as early as the date I entered my Order of remand, *May 18, 2017*, Mr. Olinsky knew (or certainly should have known), if Kender prevailed on his DIB claim: (1) the Commissioner would award Kender past-due DIB *and* his minor children auxiliary past-due benefits; (2) 25% of those benefits would be withheld and used to pay Mr. Scholtens up to $6,000 for his legal work in the administrative proceeding; and (3) the remaining balance would be potentially available to pay Mr. Olinsky if he elected to seek § 406(b) attorney's fees in lieu of the amount he had already received under the EAJA.

On August 22, 2018, the Commissioner issued a Notice of Award finding that Kender was disabled and entitled to monthly DIB beginning July 2014.[5] This meant

---

[5] The Commissioner applies a five-month waiting period between the established onset date of disability and the date monthly DIB begin. This explains the disparity in the disability onset date of January 24, 2014 and the start of benefits on July 2014. *See* https://secure.ssa.gov/poms.NSF/lnx/0425501300.

Kender was entitled to past-due DIB starting July 2014 through August 21, 2018. The Commissioner's Notice of Award calculated the past-due DIB payable to Kender as $45,403.00. Exh. B, Notice of Award to Kender, *Doc. 20-2*.

The Notice of Award specifically stated that 25% of the $45,403.00, or $11,350.75, was being "withheld" as the "maximum payable under the fee agreement to pay an approved representative's fee." *Id. at 5*. From this $11,350.75 sum, the Commissioner awarded Mr. Scholtens $6,000 for his legal work on behalf of Kender and his children in the remanded administrative proceeding. *Docs. 10-4 at 6; 20-2 at p. 4*. The Notice of Award also specifically stated that the Commissioner was continuing to hold the balance of $5,350.75, "in case your [Kender's] . . . lawyer [Mr. Olinsky] asks the Federal Court to approve a fee for work that was done before the court," as permitted by § 406(b). *Id*. Thus, of the $45,403.00 awarded to Kender as past-due DIB, $34,052.25 was paid to Kender; $6,000 was paid to Mr. Scholtens; and $5,350.75 was "withheld" by the Commissioner to await Mr. Olinsky's decision on whether to file a fee petition under § 406(b).[6]

---

[6] The Social Security Act "deals with the administrative and judicial review stages discretely: § 406(a) governs fees for representation in administrative proceedings; § 406(b)

On September 21, 2018, the Commissioner issued three separate Notices of Award, which specified the amount of the auxiliary benefits payable to Kender's three children:[7] (1) E.G.K. was entitled to receive $1,158.00 in past-due benefits, from which $241.00 was being "withheld" for attorney's fees potentially payable to Mr. Olinsky; (2) G.M.K. was entitled to receive $6,553.00 in past-due benefits, from which $1,589.75 was being "withheld" for attorney's fees potentially payable to Mr. Olinsky; and (3) I.M.K. was entitled to receive $ 6,553.00 in past-due benefits, from which $1,589.75 was being "withheld" for attorney's fees potentially payable to Mr. Olinsky. Exhibits C-E, Notices of Award to Kender's Children, *Docs. 20-3*, *20-4*, and *20-5*. Thus, of the $14,264.00 awarded to Kender's three children as auxiliary benefits, $10,843.50 was paid to Kender, as their representative, and $3,420.50 was withheld by the Commissioner to await Mr. Olinsky's decision on whether he intended to seek an award of attorney's fees under § 406(b).

---

controls fees for representation in court." *Gisbrecht*, 535 U.S. at 794 (explaining distinction between fee awards under § 406(a) and (b)).

[7] The Supreme Court has clarified that the past-due benefits to which the 25% cap applies includes not only the disability benefits awarded to the disabled claimant, but also any dependent benefits accruing to the claimant's spouse and children. *Hopkins v. Cohen*, 390 U.S. 530, 534-535 (1968).

Based on the August 22, 2018 and September 21, 2018 Notices of Award, a total of $8,771.25 was now potentially available to Mr. Olinsky as § 406(b) attorney's fees. Alternatively, if Mr. Olinsky elected *not* file a § 406(b) motion for attorney's fees, or, to the extent he did, but the motion was denied or the requested amount was reduced by the Court, part of all of the $8,771.25 would be payable to Kender, "individually" (for the part that belonged to him), *and* as "representative payee" (for the part that belonged to his three children).

On January 23, 2020, *seventeen months* after Mr. Olinsky *admits* he received the August 22, 2018 Notice of Award finding Kender disabled and entitled to DIB, he filed the pending Motion for §406(b) Attorney's Fees. In that Motion, he seeks an award of $ 8,771.25, the total amount withheld by the Commissioner from the past-due DIB for Kender *and* his three minor children. Such a long delay begs the question of whether Mr. Olinsky's Motion for Attorney's Fees is timely.

## II. Discussion

After the Commissioner entered the August 22, 2018 Notice of Award in favor

of Kender and awarded him $45,403.00 in past-due DIB,[8] with $5,350.75 withheld

for § 406(b) attorney's fees, Mr. Olinsky was on *actual notice* that he had a right to

file a motion for § 406(b) attorney's fees.[9] Mr. Olinsky knew the Commissioner had

already awarded Mr. Scholtens $6,000 of the $11,350.75 as his attorney's fees under

§ 406(a). Because the remaining balance, $5,350.75, for § 406(b) attorney's fees

was slightly less than the $5,886.61 Mr. Olinsky had already been awarded under

the EAJA, the calculation did not *yet* weigh in favor of Mr. Olinsky seeking § 406(b)

attorney's fees.

However, *Mr. Olinksy knew or should have known that*: (1) Kender had three

minor children who would also soon be receiving Notices of Awards of auxiliary

benefits; (2) the Commissioner would again be withholding 25% of those past-due

---

[8] A district court's reversal of the Commissioner's decision for further administrative proceedings will support a fee award under § 406(b), if the claimant later receives a favorable decision before the Commissioner. *Burnett v. Heckler*, 756 F.2d 621, 624 (8th Cir. 1985).

[9] An initial award of attorney's fees under the EAJA, followed by a later award of attorney's fees under § 406(b) is permissible, as long as the *smaller* attorney's fee award (typically the EAJA fee) is returned to the claimant. *Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002) ("Thus, an EAJA award offsets an award under Section 406(b), so that the [amount of the total past-due benefits the claimant actually receives] will be increased by the . . . EAJA . . .") (omitting citations).

benefits to augment the $5350.75 previously withheld from Kender's past-due DIB and that *aggregate sum* would be potentially available to Mr. Olinsky as recoverable § 406(b) attorney's fees; and (3) the amount of withheld past-due auxiliary benefits awarded to the children, added to the $5,350.75, would total *more than* the $5,886.61 Mr. Olinsky had already been paid under the EAJA.

At a minimum, after Mr. Olinsky received the August 22 Notice of Award, he had a duty to call Mr. Scholtens and run to ground whether Kender had any minor children so that he could quickly and accurately determine whether to seek § 406(b) attorney's fees *or* write the Commissioner and advise him to release those withheld sums to Kender. After all, Kender and his three minor children were entitled to receive whichever amount of attorney's fees Mr. Olinsky decided to relinquish, either the $5,886.61 he had already received under the EAJA or the potentially larger amount he might receive under § 406(b). Instead of acting, Mr. Olinsky dithered for seventeen months.

### A.    Timeliness of Mr. Olinsky's § 406(b) Fee Petition

The threshold issue the Court must resolve is whether Mr. Olinsky's Motion for Attorney's Fees was timely filed. Because § 406(b) does not specify the time

within which a motion for attorney's fees must be filed, courts have looked elsewhere for guidance.[10]

In *Smith v. Bowen*, 815 F.2d 1152, 1156 (7th Cir. 1987), the Court concluded that a motion for attorney's fees under § 406(b) must be filed within a "reasonable time." Importantly, when the Court rendered its decision, Rule 54 of the Federal Rules of Civil Procedure did *not* specify any time period within which a motion for attorney's fees must be filed. As a result, courts had concluded that Rule 54 contained an "implicit" requirement that motions for attorney's fees must be filed within a "reasonable time" after the entry of Judgment. *Id. at 1156*. Thus, the Court in *Smith* engrafted the same "reasonable time" requirement onto § 406(b).

However, six years later, Fed. R. Civ. P. 54(d) *was amended* to specify that motions for attorney's fees and expenses must be filed "no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B). In *Shepherd v. Apfel*, 981 F. Supp. 1188, 1190 (S.D. Iowa 1997), the court held that, in the absence of any time limit for filing a motion for attorney's fees under s 406(b), such a motion "must be

---

[10] In contrast, an application for attorney's fees under the EAJA must be filed "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B).

filed and served no later than 14 days after entry of Judgment" as specified in Rule 54(d)(2)(B). Thus, in *Shepherd* and *Smith*, the courts used the *same reasoning* to conclude that motions for attorney's fees under § 406(b) must be filed within the time period for filing a motion for attorney's fees under Rule 54.

In *McGraw v. Barnhart*, 450 F.3d 493, 505 (10th Cir. 2006), the Court relied on *Smith* to hold that a § 406(b) fee petition "must be brought within a reasonable time." In doing so, the Court concluded that a strict application of Rule 54(d)(2)(B) to motions for attorney's fees under § 406(b) was impractical and contrary to congressional intent. It also noted that strictly applying Rule 54(d), in an administrative proceeding involving an award of social security benefits, would require altering the date the 14-day period started running, which was contrary to Rule 54's "plain language." *Id. at 504*. However, *none* of the other circuits that subsequently considered this same issue followed the holding in *McGraw*.

The Second, Third, Fifth and Eleventh Circuits have now held that a § 406(b) motion for attorney's fees must be filed within the 14-day time period specified in Rule 54(d)(2)(B), with equitable tolling principles determining *when* the 14-day period begins to run. *See Sinkler v. Berryhill*, 932 F.3d 83, 85 (2nd Cir. 2019) ("Once counsel received notice of the benefits award - and, therefore, the maximum

attorney's fees that may be claimed - there is no sound reason not to apply Rule 54(d)(2)(B)'s fourteen-day limitations period to a § 406(b) filing, just as it would apply to any other final or appealable judgment); *Walker v. Astrue*, 593 F.3d 274, 276, 280 (3d Cir. 2010) (applying Rule 54(d)(2)(B) and holding "that the application of the filing deadline is tolled until the notice of award is issued by the Commissioner and counsel is notified of that award");[11] *Pierce v. Barnhart*, 440 F.3d 657, 663 (5th Cir. 2006) (Rule 54(d)(2)'s 14-day limit applies and should begin running from the date the award notice is issued); and *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277-78 (11th Cir. 2006) (applying Rule 54(d)(2)'s 14-day limit, but declining to decide when the period starts to run).

As the Second Circuit explained:

> [Equitable tolling] sensibly applies to Rule 54(d)(2)(B)'s limitations period because parties who must await the Commissioner's award of benefits on remand cannot be expected to file an application for attorney's fees that are statutorily capped by the amount of an as-yet-unknown benefits award. Once counsel receives notice of the benefits award -- and, therefore, the maximum attorney's fees that may be claimed -- there is no sound reason not to apply Rule 54(2)(B)'s fourteen-day limitations period to a § 406(b) filing, just as it would apply to any other final or appealable judgment.

---

[11] The Court in *Walker* concluded that *Smith* is "not good law" and that the decision in *McGraw* "finds little support in the law." *Walker*, 593 F.3d at 279.

*Sinkler*, 932 F.3d at 88.

### B. Olinsky's Arguments In Support Of His Motion for Attorney's Fees Being Timely

As previously explained, Mr. Olinsky admits he received the August 22, 2018 Notice of Award of benefits to Kender. Based solely on the information contained in that Notice, Mr. Olinsky was in a position to calculate that he was entitled to § 406(b) attorney's fees of $5,350.75, only $535.86 less than the $5,886.61 he had already been paid under the EAJA. Furthermore, Mr. Olinsky knew or certainly should have known that Kender had three minor children and the Commissioner would soon be issuing Notices of Awards for *their* past-due auxiliary benefits that would cause his § 406(b) attorney's fees to increase to *more* than the attorney's fees he had received under the EAJA. If Mr. Olinsky had any questions about whether Kender had any minor children, all he had to do was call his co-counsel, Mr. Scholtens, who had access to all of the information necessary to quickly see that it would be in Mr. Olinsky's financial interest to file a motion for attorney's fees under § 406(b).

On September 21, 2018, the Commissioner filed the Notices of Award for the three children, which specified that the aggregate amount now available for § 406(b)

fees was $8,771.25. This represented 33% *more* than the $5,886.61 Mr. Olinsky had already been paid under the EAJA.

Based on the foregoing undisputed facts, it is clear that Mr. Olinsky's failure to keep up with developments in his client's case was the root cause for his seventeen-month delay in filing a motion for attorney's fees under § 406(b). The length of that delay was unreasonable, and was not caused by anything that might support a basis for equitable tolling under Rule 54(d).

In his "Attorney's Affirmation," Mr. Olinsky makes the following representations in support of his claim that his Motion was timely filed, notwithstanding his seventeen-month delay in filing it:

> Petitioner was not Plaintiff's administrative level representative. Petitioner received the Notice of Award from the Social Security Administration when it was issued, August 22, 2018. Based on calculations from said Notice of Award, Petitioner believed there would only be $5,350.75 remaining for 406(b) fees due to the administrative representative receiving $6,000.00 under 406(a). Petitioner received a telephone call from Don at Court case January 23, 2020 indicating they are still withholding $8,771.25 for attorney's fees. This is the first indication the Petitioner has had indicating there were fees over the EAJA fees previously paid being held. Please consider this petition timely due to this information being previously unknown.

Attorney Affirmation, *Doc. 20, p. 2, ¶ 4.*

In making these excuses, Mr. Olinsky fails to explain *why* he never asked Kender, his client, whether he had any children before he signed the fee agreement with him; or *why*, after he received the August 22, 2018 Notice of Award for Kender, he failed to call Mr. Scholtens, his co-counsel, to discuss whether Kender had minor children, something that might substantially increase the amount of § 406(b) attorney's fees. Mr. Scholtens clearly knew that Kender was the father of three children and that, after the award of past-due benefits to Kender on August 22, 2018, there would be awards of auxiliary benefits to his three children. All of this important information is routinely shared between co-counsel after they win a claim for DIB. Mr. Olinsky provides no explanation for why that normal practice was not followed in this case.

In his "Attorney's Affirmation," Mr. Olinsky states that, on January 23, 2020, he received a phone call from "Don at Court case [sic] . . . indicating they [the Commissioner] are still withholding $8,771.25." According to Mr. Olinsky, this phone call from "Don," with no last name, who worked at an employer called "Court case," was the "first indication [Mr. Olinsky] has had [sic] indicating there were fees over the EAJA fees previously paid being held." This constitutes his sole basis for

16

asking the Court to "consider this petition [for § 406(b) attorney's fees] timely due to this information being previously unknown."

Now awakened to the possibility that there might be more money for him in attorney's fees under § 406(b) than the amount he had already been paid under the EAJA, Mr. Olinsky sprang into action. On the *same day*, he received the phone call from "Don," Mr. Olinsky filed the pending "Notice of Motion for Attorney's Fees Pursuant to the Social Security Act Section 206(b)(1)," along with supporting exhibits. *Docs. 19-20*.

Among the supporting exhibits that Mr. Olinsky attached to his Motion for Attorney's Fees were the three September 21, 2018 Notices of Awards of auxiliary benefits to Kender's minor children. The fact that Mr. Olinsky was able to attach those documents to his Motion for Attorney's Fees, *on the same day he received the phone call from Don and filed that pleading* suggests those Notices of Awards to Kender's children were already in his possession, just like the August 22 Notice of Award of benefits to Kender, which he *admits* he received on or shortly after August 22.

The August 22 Notice of Award explicitly advised Mr. Olinsky that, as the attorney for Kender, he was obligated to notify the Commissioner "in writing" if he was "not going to file a fee petition with the Court" under § 406(b):

> If your lawyer [Mr. Olinsky] is not going to file a fee petition with the Court, he should notify us in writing so that we can send you and your family any funds we withheld from your past-due benefits.

*Doc. 20-21 at 5-6.* Conversely, if Mr. Olinsky was going to file a § 406(b) fee petition with the Court, the August 22 Notice of Award made it clear he needed to get started. Instead, Mr. Olinsky *did nothing* for seventeen months before finally filing his Motion for Attorney's Fees on January 23, 2020.

For Mr. Olinsky's Motion for Attorney's Fees to be considered timely under Rule 54(d)(2)(B), the Court would have to find that equitable tolling extended the 14-day filing period for more than one year. The Attorney Affirmation Mr. Olinsky filed is poorly drafted, extraordinarily vague, and offers an excuse for waiting seventeen months to file his motion for attorney's fees under § 406(b) that is, at best, highly implausible.

It is very hard to believe that, after Mr. Olinsky agreed to represent Kender, he never discussed with Kender or Mr. Scholtens whether there were any minor children who would also be entitled to benefits if Kender prevailed on his claim.

After Mr. Olinsky received the August 22 Notice of Award, he *admits* he performed the calculations of § 406(b) attorney's fees, based on the amount of past-due DIB awarded to Kender, and realized it was very close to the amount he had already been paid under the EAJA. An experienced social security lawyer like Mr. Olinsky undoubtedly would have called Mr. Scholtens, as soon as he received the August 22 Notice of Award, and asked him if Kender had any minor children, something that would result in the total withheld § 406(b) attorney's fees for Kender and his children exceeding the amount of the attorney's fees awarded to Mr. Olinsky under the EAJA. If Mr. Olinsky failed to do so, as he suggests in his Attorney Affirmation, it is *entirely his own fault* and provides no basis for equitable tolling.

While the Eighth Circuit has not decided the time limit within which a motion for § 406(b) attorney's fees must be filed, it has addressed equitable tolling. In *Thomson v. Commissioner of Social Sec. Adm.*, 919 F.3d 1033 (8th Cir. 2019), the claimant filed a timely "letter of appeal" with the Commission, instead of a "notice of appeal" with the district court. This resulted in the claimant's appeal being untimely. The claimant argued that this good-faith mistake was sufficient to trigger equitable tolling of the sixty-day time period for initiating an appeal. Applying the analogous equitable tolling standard used in habeas cases, the Court held that the

claimant "bears the burden of establishing two elements: (1) he has been pursuing his rights diligently; and (2) some extraordinary circumstance stood in his way." *Thomson*, 919 F.3d at 1036 (*quoting Pace v. DiGuglielmo*, 544 U.S. 408 (2005). The Court concluded that the claimant's failure to timely file a Notice of Appeal in the district court was "at best a garden variety claim of excusable neglect" for which equitable tolling was unavailable. *Id.* at 1037 (omitting citation and internal quotations).

Here, Mr. Olinksy is making the same kind of plea for "excusable neglect" that the Court rejected in *Thompson*. In addition, the record makes it clear that Mr. Olinsky did not act with the required "due diligence." *See also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, (1990) ("We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.").

### III. Conclusion

Given Mr. Olinsky's lack of diligence and complete failure to demonstrate any extraordinary circumstances that prevented him from filing his fee request sooner, the Court concludes that he is not entitled to equitable tolling. Because the 14-day time limit imposed by Fed. R. Civ. P. 54(d)(2)(B) expired long before he

filed his Motion for Attorney's Fees, it is untimely and must be denied. *See Sinkler*, 932 F.3d at 90 (finding that fee request filed more than six months after receipt of notice of Commissioner's calculation of benefits on remand was untimely under Rule 54 and also unreasonable); *Rice v. Astrue*, 831 F.Supp. 2d 971, 982 (N. D. Tex. 2011) (assuming 14-day period started on the day the SSA issued favorable award, request was over one year too late).

IT IS THEREFORE ORDERED THAT Petitioner's Motion for Attorney's Fees, pursuant to 42 U.S.C. § 406(b), *Doc. 19*, is DENIED as untimely. Mr. Olinsky may retain the EAJA fee award, but he is not entitled to a contingency fee, pursuant to § 406(b), either from the past-due benefits held by the Commissioner or from Kender directly.

The Commissioner is directed to promptly calculate and pay Shannon Kender the respective sums owed to him, individually and as representative payee for his three minor children, from the total sum of $8,771.25, which has been withheld as potential § 406(b) attorney's fees.

IT IS SO ORDERED this 26th day of March, 2020.

_____
UNITED STATES MAGISTRATE JUDGE